**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Allyn Lee Schlumpberger,                    Case No. 16-cv-78 (SRN/TNL)

       Plaintiff,

v.                                          **REPORT &**
                                            **RECOMMENDATION**

Dana Osborne,
Patrick Rodning,
Troy Basaraba, *Security Manager*,
Kevin Moser,
Julianna L. Beavens, and
Richard O'Connor,
*sued in their individual and official*
*capacities*,

       Defendants.

---

Allyn Lee Schlumpberger, MSOP, 1111 Highway 73, Moose Lake, MN 55767-9452 (pro se Plaintiff); and

Brett Terry and Frederic J. Argir, Assistant Attorneys General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101-2128 (for Defendants Osborne, Rodning, Moser, Beavens, and O'Connor[1]).

---

## I. INTRODUCTION

This matter comes before the Court on Defendants Dana Osborne, Patrick Rodning, Kevin Moser, Julianna L. Beavens, and Richard O'Connor's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint (ECF No. 18). This motion has been referred to the undersigned for a report and recommendation to the district court, the

---

[1] Counsel does not represent Defendant Basaraba, who passed away before this litigation began. (Defs.' Mem. in Supp. at 1 n.1, ECF No. 21; Defs.' Reply at 1 n.1, ECF No. 30.) *See infra* Section III.A.

Honorable Susan Richard Nelson, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 24.) Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss be **GRANTED**.

## II. BACKGROUND[2]

Pro se Plaintiff Allyn Lee Schlumpberger brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his civil rights "secured by the Fourth and Fourteenth Amendments." (Compl. ¶¶ 2, 3, ECF No. 1.)

### A. Factual Allegations

Plaintiff has been involuntarily committed to the State of Minnesota's Department of Human Services and the Minnesota Sex Offender Program ("MSOP"). (Compl. ¶¶ 1, 6, G.) Plaintiff currently resides in the MSOP facility located in Moose Lake, Minnesota. (*See generally* Compl.) Defendants are all MSOP employees. (Compl. ¶¶ 2, 7(b)-(f).)

In or around May 2015, MSOP clients were notified of pending new room assignments. (Compl. ¶ 12.) As a result of the new room assignment, Plaintiff was to be placed with a roommate. (Compl. ¶¶ 10, 12, 16.) Plaintiff was vocal about not wanting a roommate. Towards the end of May, Plaintiff "commented to staff that he wasn't going to take a roommate." (Compl. ¶ 12.) In the middle of June, Plaintiff stated in a "Client Request" to MSOP staff that he was "informing you in writing that [he] d[id] not intend to willingly move." (Compl. ¶ 9.) An MSOP staff member responded the following day, stating that the room changes were moving forwarded and he would need "to work with

---

[2] "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

[Plaintiff] to find a roommate." (Compl. ¶ 10.) At the end of August, Plaintiff "again told his treatment team that he wasn't moving." (Compl. ¶ 12.)

Plaintiff's move was to occur in the beginning of September. On September 1, Plaintiff "refused to comply with property moves." (Compl. ¶ 12.) On September 2, Plaintiff "was given several prompts and directives to go to his new room assignment on unit 1-A." (Compl. ¶ 12.) Plaintiff "continually refused to cooperate and comply." (Compl. ¶ 12; *see* Compl. ¶ 11.) "There were over a hundred other moves that were scheduled to occur . . . ," and Plaintiff's "refusal prevented another client from being able to reside in his scheduled room." (Compl. ¶ 12.)

Later that day, Plaintiff "was asked again . . . to move to [his] new room assignment but he again refused to cooperate and comply with staff directives." (Compl. ¶ 12; *see* Compl. ¶ 11.) When Plaintiff again refused to move, MSOP staff members "approached and instructed [Plaintiff] to turn around for restraints." (Compl. ¶ 11.) Plaintiff was then escorted to the High Security Area and placed on Protective Isolation Status "for non-compliance with room assignment during formal population count." (Compl. ¶¶ 11, 12.) Defendant Beavens signed off on Plaintiff's Protective Isolation Status along with another MSOP staff member. "The reason that Protective Isolation was initiated is as follows: (1) client is exhibiting dangerous behavior that is uncontrollably [sic] by any other means; (2) placement on Protective Isolation Status is not for the convenience of staff; and (3) placement on Protective Isolation Status is not a substitute for programming." (Compl. ¶ 15 (quotation omitted).)

An Individual Program Plan was created for Plaintiff the same day based on his "refus[al] to move to his new assigned living unit." (Compl. ¶¶ 14, 16.) The Individual Program Plan provided that Plaintiff would "have access to two 30[-]minute[] breaks daily in the High Security Area . . . common area to address hygiene, exercise, and fresh air"; "submit client requests for anything outside of these parameters related to hygiene, exercise, and fresh air"; and "be asked one time per shift if he is ready to leave the [High Security Area]." (Compl. ¶ 16; *accord* Compl. ¶ 17.) "If [Plaintiff] cho[se] to move to his assigned unit, staff w[ould] work with him at that time." (Compl. ¶ 16; *accord* Compl. ¶ 17.) Any move could "occur between 6:30 a.m. and 9:45 p.m." (Compl. ¶ 16; *accord* Compl. ¶ 17.) If Plaintiff "request[ed] to move outside of these hours, he w[ould] have to wait until the next day to be moved." (Compl. ¶ 16; *accord* Compl. ¶ 17.) Defendants Beavens and O'Connor signed the Individual Program Plan. (Compl. ¶ 14.)

The next day, September 3, Defendant O'Connor prepared a Protective Isolation Status Review Report. (Compl. ¶¶ 18, 20.) Defendant O'Connor noted, among other things, that Plaintiff had been offered treatment materials by MSOP staff and, when asked "if he was going to return back to the unit," Plaintiff "reported that he was not going back." (Compl. ¶ 18; *see* Compl. ¶ 21.) Plaintiff's Protective Isolation Status was discontinued. (Compl. ¶¶ 13, 20, 23.)

Additional documentation noted that, while Plaintiff's Protective Isolation Status was discontinued after 24 hours, Plaintiff refused to leave the High Security Area and remained there on an Individual Program Plan. (Compl. ¶ 23.) This document was signed by Defendants Osborne, Basaraba, and Rodning. (Compl. ¶ 23.)

Based on these events, Plaintiff alleges that his constitutional rights were violated because he has the right to be free from "unreasonable restrictions of any kind"; "unreasonable placement" in the High Security Area without a documented risk to Plaintiff or public safety or "a documented and legitimate purpose"; and "excessive, unresponsive, restrictive restrictions without due process." (Compl. ¶ 26.) As best as this Court is able to tell, Plaintiff appears primarily to be alleging that his substantive and procedural due process rights under the Fourteenth Amendment were violated when he was placed in the High Security Area/Protective Isolation for refusing to move to his new room assignment. Additionally, some of Plaintiff's claims appear to derive from the Fourth Amendment. *See infra* Section III.C.3.b. Plaintiff's claims are brought against Defendants in their individual and official capacities. Plaintiff seeks declaratory and injunctive relief as well as damages.

### B. Procedural History

On February 8, 2017, Defendants filed the instant motion to dismiss. (ECF No. 18.) The motion was referred to the undersigned and a briefing schedule was issued. (ECF Nos. 24, 25.) Following the completion of briefing, this matter was subsequently stayed by the Honorable John R. Tunheim, Chief District Judge for the United States District Court for the District of Minnesota, based on related litigation pending in *Karsjens v. Piper*, Case No. 11-cv-3659 (DWF/TNL). (ECF No. 31.) On October 22, 2018, Chief District Judge Tunheim ordered that the stay be lifted. (ECF No. 34.) Having been fully briefed prior to the imposition of the stay, Defendants' motion is ripe for a determination on the papers.

5

# III. ANALYSIS

Defendants have moved for dismissal of this matter based on the Eleventh Amendment and failure to state a claim. The Court considers each in turn.

## A. Defendant Basaraba

Plaintiff commenced this action in January 2016. (*See generally* Compl.) There is no dispute that Defendant Basaraba passed away before the Complaint was filed. In fact, Plaintiff specifically notes in the Complaint that Defendant O'Connor is being "automatically substituted" for Defendant Basaraba under Federal Rule of Civil Procedure 25 based on Basaraba's death in December 2015. (Compl. n.1.) In his memorandum in opposition, Plaintiff contends that another individual, "Steve Sayovitz" should be substituted for Defendant Basaraba under Rule 25. (Pl.'s Mem. in Opp'n at 1 n.1, ECF No. 26.)

"Rule 25(a) authorizes the substitution of proper parties when an existing party dies *after* the suit is commenced, but does not address situations where the death occurred *before* the suit was filed." *Lacy v. Tyson*, No. 1:07-cv-00381-LJO-GSA-PC, 2012 WL 4343837, at *2 (E.D. Cal. Sept. 20, 2012), *adopting report and recommendation*, 2012 WL 5421230 (E.D. Cal. Nov. 5, 2012). "[C]ourts have held, as a rule, that the substitution of parties cannot be ordered in conformance with Rule 25(a)(1) where the person for whom substitution is sought died prior to being named a party." *Id.* (citing cases); *see, e.g.*, *Coleman v. United States*, Civ. No. 15-1942 (RBK) (AMD), 2017 WL 2636045, at *5 (D. N.J. June 19, 2017) (substitution not appropriate where defendant died prior to commencement of action); *Jenkins v. South Carolina Dep't of Corr.*, Civil Action

6

No. 8:09-3293-RMG-BHH, 2010 WL 4609115, at *1 (D. S.C. Aug. 25, 2010) (same), *adopting report and recommendation*, 2010 WL 4622510 (D. S.C. Nov. 4, 2010); *see also* 7C Charles Alan Wright, Arthur Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1951 (3d ed.) ("Substitution is not possible if one who was named as a party in fact died before the commencement of the action."). Because Defendant Basaraba passed away before the commencement of this action, all claims against him should be dismissed. *See Lacy*, 2012 WL 4343837, at *2; *Jenkins*, 2010 WL 4609115, at *1.

The Court recognizes that Plaintiff is proceeding pro se. Even if the Court were to grant Plaintiff leave to amend to add the proper individuals as defendants for the individual and official-capacity claims he is attempting to assert against Defendant Basaraba, Plaintiff has failed to sufficiently allege a violation of his constitutional rights for the reasons that follow.

### B. Eleventh Amendment Immunity

Defendants first assert that Plaintiff's claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment. Plaintiff agrees that such damages are barred. (Pl.'s Mem. in Opp'n at 4-5.)

"A plaintiff may assert § 1983 claims against a public official acting in his individual capacity and in his official capacity." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007); *accord Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). "A suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" *Baker*, 501 F.3d at 925 (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)); *see*

*Johnson*, 172 F.3d at 535 ("A suit against a public employee in his or her official capacity is merely a suit against the public employer."). Defendants are all employees of MSOP and the Department of Human Services, an arm of the State of Minnesota. *Daniels v. Jesson*, No. 13-cv-736 (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014) ("MSOP operates under the auspices of the Minnesota Department of Human Services, which is itself a subdivision of the State of Minnesota.").

"[T]he Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, as well as State Agencies, because such lawsuits are essentially for the recovery of money from the state." *King v. Dingle*, 702 F. Supp. 2d 1049, 1069 (D. Minn. 2010) (quotation omitted). Thus, "[t]he Eleventh Amendment protects the State, and the arms of the State, from liability for monetary damages in a Section 1983 action" such as this. *Id.*; *see also, e.g.*, *Semler v. Ludeman*, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *7 (D. Minn. Jan. 8, 2010) ("It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity."). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Plaintiff's claims are barred by the Eleventh Amendment. *See, e.g.*, *Daniels*, 2014 WL 3629874, at *4-6; *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 942 (D. Minn. 2014); *Semler*, 2010 WL 145275, at *6-7.

Plaintiff also seeks prospective and injunctive relief. "A plaintiff may maintain an action against a government official if the complaint seeks only injunctive or prospective relief." *Semler*, 2010 WL 145275, at *7. Declaratory judgments and injunctions are the

types "of prospective relief that can be sought in federal court from state officials sued in their official capacities, notwithstanding the state's sovereign immunity." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016); *accord McDaniel v. Precythe*, 897 F.3d 946, 951-52 (8th Cir. 2018).

Therefore, to the extent Plaintiff seeks monetary damages against Defendants in their official capacities, the Court recommends that such claims be dismissed without prejudice. *See Roth v. United States*, 476 F. App'x 95 (8th Cir. 2012) (per curiam).

### C. Statement of a Claim

Again, as best as this Court is able to tell, Plaintiff alleges that his substantive and procedural due process rights under the Fourteenth Amendment were violated when he was placed in the High Security Area/Protective Isolation for refusing to move to his new room assignment. As noted above, Plaintiff also appears to be asserting claims derivative of the Fourth Amendment. Defendants contend Plaintiff has failed to state a claim against them.

#### 1. Legal Standard

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[A]lthough a complaint need not contain 'detailed factual

9

allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

"In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, [courts] hold a pro se complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted). But, "[a]lthough pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims advanced.'" *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). As the Eighth Circuit has explained,

> [w]hen we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.

*Stone*, 364 F.3d at 915.

### 2.  Defendant Moser

Plaintiff has listed Defendant Moser as a defendant in the caption of the Complaint.  Defendant Moser is not identified in the "PARTIES" section of the Complaint.  The Complaint contains no factual allegations setting forth what Defendant Moser allegedly did or failed to do that violated Plaintiff's constitutional rights.  There is nothing in the Complaint indicating what, if any, connection Defendant Moser has to the events in question.

"To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson*, 747 F.3d at 543 (citing *Iqbal*, 556 U.S. at 676).  Plaintiff "must allege specific facts of [Defendant Moser's] personal involvement in, or direct responsibility for, . . . [the alleged deprivation] of his constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006); *accord Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018).  Plaintiff himself specifically recognizes the need to plead the personal involvement of each defendant.  (*E.g.*, Pl.'s Mem. in Opp'n at 4 ("In other words, civil rights claimants must plea[d] facts showing each defendant's personal involvement in the alleged constitutional wrong doing."), ("In sum, when plaintiff seeks relief under § 1983, his complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law, which purportedly violated the plaintiff's federal constitutional rights.").

Because Plaintiff has failed to plead the personal involvement of Defendant Moser in any of the events in question, the Court recommends that all claims against Defendant Moser be dismissed without prejudice for failure to state a claim.

### 3. Constitutional Claims

"To recover under § 1983, a plaintiff must prove (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *McDonald v. City of Saint Paul*, 679 F.3d 698, 704 (8th Cir. 2012) (quotation omitted). Plaintiff asserts that his placement in the High Security Area/Protective Isolation violated his constitutional rights under the Fourth and Fourteenth Amendments.

### a. Fourteenth Amendment

"The Due Process Clause of the Fourteenth Amendment ensures that states do not deprive individuals of life, liberty, or property without due process of law." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing U.S. Const. amend XIV, § 1); *accord Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999).

> This clause has two components: the procedural due process and the substantive due process components. Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim. Where no such interest exists, there can be no due process violation.

*Singleton*, 176 F.3d at 424 (quotations and citations omitted); *accord McDonald*, 679 F.3d at 704.

Based on his civil commitment, Plaintiff's "liberty interests are considerably less than those held by members of free society." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). "The nature of [Plaintiff's] liberty interest in being free from isolation must therefore be understood in the context of that commitment and its accompanying restrictions." *Id.*; *accord Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012). Civilly committed individuals like Plaintiff retain liberty interests analogous to pretrial detainees. *Youngberg v. Romeo*, 457 U.S. 307, 319-20 (1982); *Hall v. Ramsey Cty.*, 801 F.3d 912, 919 (8th Cir. 2015); *Serna v. Goodno*, 567 F.3d 944, 948-49 (8th Cir. 2009); *accord Beaulieu*, 690 F.3d at 1028; *see also, e.g.*, *Yazzie v. Moser*, No. 12-cv-399 (PAM/JJK), 2014 WL 3687110, at *2 (D. Minn. July 24, 2014) [hereinafter *Yazzie II*].

"[I]t is settled that pretrial detainees possess a constitutional right 'to be free from punishment.'" *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see, e.g.*, *Phillips v. Kiser*, 172 F. App'x 128, 129 (8th Cir. 2006) (per curiam); *Whitfield v. Dicker*, 41 F. App'x 6, 7 (8th Cir. 2002) (per curiam); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). Plaintiff has alleged that his placement in the High Security Area/Protective Isolation was not justified because there was no "documented risk to Plaintiff, public safety or a documented and legitimate purpose," (Compl. ¶ 26 (b)), and that such placement was "imposed as punishment without substantive and procedural due process," (Compl. ¶ 2). (*See also* Pl.'s Mem. in Opp'n at 6 ("Schlumpberger was denied his constitutional rights based on the fact that he did not want to room with another 'client' among other facts and considerations. The

arbitrariness of that decision remains a question of material fact. This only highlights the question of arbitrariness of Schlumpberger[']s placement in the [High Security Area], based on the fact that he did not want to be roommates with another 'client.' Pursuant to MSOP Policy #415-5087, and for placement in the [High Security Area], a client must be out of behavioral control.").) Accordingly, the Court proceeds to evaluate Plaintiff's claims under the Fourteenth Amendment. *See Benson v. Piper*, No. 16-cv-509 (DWF/TNL), 2017 U.S. Dist. LEXIS 158017, at *8-11 (D. Minn. Mar. 31, 2017).

### i. Procedural Due Process

"Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)); *accord Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 924 (8th Cir. 2016) (noting "requirements of due process are not rigid").

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535. The same standard applies to involuntarily committed individuals. *Hall*, 801 F.3d at 919; *see, e.g.*, *Yazzie II*, 2014 WL 3687110, at *3.

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a

> court permissibly may infer that the purpose of the
> governmental action is punishment . . . .

*Bell*, 441 U.S. at 539 (footnote omitted).  These legitimate government objectives include
maintaining order and security.  *Id.* at 540; *see Hall*, 801 F.3d at 919.  "Although an
involuntarily committed patient of a state hospital is not a prisoner per se, his
confinement is subject to the same safety and security concerns as that of a prisoner."
*Beaulieu*, 690 F.3d at 1028 (quotation omitted); *see Senty-Haugen*, 462 F.3d at 887 ("The
safety of the [MSOP] facility is one of the key responsibilities of Offender Program
officials . . . ."), 888 (MSOP officials "have a 'vital interest' in maintaining a secure
environment").

Plaintiff has not alleged facts showing that his placement in the High Security
Area/Protective Isolation under these circumstances amounted to punishment in the
constitutional sense.  *See Bell*, 441 U.S. at 537; *Hall*, 801 F.3d at 919-20.  Plaintiff
readily admits throughout the Complaint that he received months of advance notice that
he would be required to move, he did not want to move, and he refused to move when
directed.  And, Plaintiff expressly acknowledged in the Complaint that he was placed in
the High Security Area/Protective Isolation when his refusal to move "prevented another
client from being able to reside in his scheduled room during formal count."  (Compl.
¶ 12.)  Even when read in the light most favorable to Plaintiff, the factual allegations in
the Complaint show that he was placed in the High Security Area/Protective Isolation
after multiple staff members spoke with him about moving to his new room assignment
and his refusal to move displaced another client during the formal count.

"Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense . . . ." *Bell*, 441 U.S. at 537; *accord Hall*, 801 F.3d at 919. The Eighth Circuit "ha[s] held [that] the Government has legitimate interests that stem from its need to manage the facility in which the individual is detained." *Hall*, 801 F.3d at 919 (quotation omitted); *see Senty-Haugen*, 462 F.3d at 887-88. Plaintiff has not alleged that maintaining internal security at the MSOP facility is not a legitimate government interest. *See Yazzie II*, 2014 WL 3687102, at *3; *see also Beaulieu*, 690 F.3d at 1028; *Senty-Haugen*, 462 F.3d at 887, 888. The displacement of at least one other client by Plaintiff's refusal to move and the concomitant inability to locate and account accurately for clients entrusted to MSOP's care strikes at the very core of maintaining institutional order, safety, and security—plainly legitimate government objectives—and requires an expeditious response. *See Yazzie II*, 2014 WL 3687110, at *3. "[F]ederal courts are to give deference to state officials managing a secure facility, and [MSOP] staff have a substantial interest in providing efficient procedures to address security issues." *Senty-Haugen*, 462 F.3d at 887; *see Hall*, 801 F.3d at 919-20. Plaintiff has not alleged facts showing his placement in the High Security Area/Protective Isolation was a form of punishment implicating his right to due process under the Fourteenth Amendment.

Further, to the extent Plaintiff's Complaint could be read as asserting that he should have received a hearing prior to being placed in the High Security Area/Protective Isolation, Plaintiff has not alleged how not receiving a hearing prior to being placed in High Security Area/Protective Isolation constituted punishment under these

circumstances. *See Yazzie II*, 2014 WL 3687110, at *3; *see also Senty-Haugen*, 462 F. 3d at 887 ("Because the use of isolation is a discretionary decision based on subjective factors, it is unlikely that more formal trial like procedures would aid the determination.").

In any event, "[t]he fundamental requirement of due process 'is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Clark*, 375 F.3d at 702 (quoting *Mathews*, 424 U.S. at 333) (internal quotation marks omitted); *see Senty-Haugen*, 462 F.3d at 888. The opportunity to be heard includes adequate notice under the circumstances. *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997); *Murphy v. Minn. Dep't Human Servs.*, 260 F. Supp. 3d 1084, 1111 (D. Minn. 2017). Although Plaintiff alleges that he was placed in the High Security Area/Protective Isolation without "procedural due process," (Compl. ¶ 2), Plaintiff has not alleged any facts challenging the manner of the alleged deprivation. *See Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006). Plaintiff does not allege a lack of notice as to why he was placed in the High Security Area/Protective Isolation. Again, the Complaint is replete with instances in which MSOP staff informed Plaintiff of the impending move and his required compliance. The allegations in the Complaint also show that Plaintiff was specifically advised as to why he was being placed in the High Security Area/Protective Isolation, namely, because he would not comply with his new room assignment.

Nor has Plaintiff alleged any facts showing that he lacked an opportunity to be heard regarding his placement in the High Security Area/Protective Isolation. Plaintiff argues he *did* allege that there was no procedure in place for challenging his placement in

the High Security Area/Protective Isolation and it "should appear to this Court that there is a question of material fact as to how [he] could have had the unjustified placement . . . be reviewed or to whom he could have requested such review." (Pl.'s Mem. in Opp'n at 14-15.) There are, however, no such allegations in the Complaint. *See Perseke v. Moser*, No. 16-cv-557 (PJS/LIB), 2016 WL 6275191, at *5 (D. Minn. Sept. 26, 2016), *adopting report and recommendation*, 2016 WL 6246761 (D. Minn. Oct. 25, 2016). "Federal courts are not required to 'assume facts that are not alleged just because an additional factual allegation would have formed a stronger complaint.'" *Wickner v. Collelo*, No. 11-cv-3448 (DWF/JJK), 2011 WL 6960975, at *1 (D. Minn. Dec. 14, 2011) (quoting *Stone*, 364 F.3d at 915), *adopting report and recommendation*, 2012 WL 32940 (D. Minn. Jan. 6, 2012).

Moreover, Minnesota Rule 9515.3090, which discusses behavior management and program safety at state hospitals and facilities including MSOP, sets forth a procedure by which clients can seek review of placement in protective isolation. Minn. R. 9515.3090, subp. 5. Additionally, Minn. Stat. § 246B.03, subd. 3, provides for a grievance procedure for civilly committed individuals like Plaintiff to address their concerns and complaints. *See Pyron v. Ludeman*, Nos. 10-cv-3759, 10-cv-4236 (PJS/JJG), 2011 WL 3290365, at *1 (D. Minn. July 29, 2011) ("grievance process provided by Minn. Stat. § 246B.03, subd. 3," is "an adequate post-deprivation remedy"), *aff'd sub nom.*, *Hollie v. Ludeman*, 450 F. App'x 555 (8th Cir. 2012). Plaintiff has not alleged that he attempted to avail himself of the review process, grievance procedure, or any other means of challenging the placement and was somehow denied an opportunity to be heard. *See Creason*, 435

18

F.3d at 824.   Nor has Plaintiff pleaded facts showing that these avenues were not available to him.  *See Wickner*, 2011 WL 6960975, at *1.

In sum, Plaintiff has not alleged facts showing that his placement in the High Security Area/Protective Isolation under these circumstances constituted punishment or that he was denied notice and an opportunity to be heard.   Therefore, the Court recommends that Plaintiff's procedural due process claims be dismissed.

### ii.  Substantive Due Process

The right to substantive due process under the Fourteenth Amendment "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."   *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quotation omitted).   "In the context of substantive due process, an individual must overcome a very heavy burden to show a violation of the Fourteenth Amendment."   *Hall*, 801 F.3d at 917.

> To establish a violation of an individual's substantive due process rights, the plaintiff must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.

*Norris*, 494 F.3d at 637-38 (quotation omitted); *accord Karsjens v. Piper*, 845 F.3d 394, 408 (8th Cir. 2017); *Hall*, 801 F.3d at 917.

> To meet this high standard, . . . the alleged substantive due process violations must involve conduct so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise

> excess of zeal that it amounted to a brutal and inhumane
> abuse of official power literally shocking to the conscience.

*Karsjens*, 845 F.3d at 408 (quotation omitted).  "The theory of substantive due process is

properly reserved for truly egregious and extraordinary cases."  *Mills*, 614 F.3d at 498

(quotation omitted); *see also Montin v. Gibson*, 718 F.3d 752, 755 (8th Cir. 2013) ("[A]

plaintiff may maintain a substantive due process claim only if the contested state action is

so egregious or outrageous that it is conscience-shocking."  (quotations and citations

omitted)); *Hall*, 801 F.3d at 917 ("[A] government official's conduct must be 'so

egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience.'" (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847-48 n.8 (1998)).

*Professional-Judgment Test.*    "The Supreme Court has recognized that

involuntarily civilly committed persons hold a protected liberty interest in being free

from unnecessary bodily restraint."  *Montin*, 718 F.3d at 755-54 (citing *Youngberg*, 457

U.S. at 320-22).  *Youngberg* involved physical restraints placed on an individual who was

involuntarily committed to a state mental institution.  457 U.S. at 309-10.  At first, the

individual had been "physically restrained during portions of each day" while he was

recovering from treatment of a broken arm.  *Id.* at 310.  Later, after his arm healed, he

was restrained "for prolonged periods on a routine basis."  *Id.* at 311.

Under *Youngberg*, "[t]he test for assessing the constitutionality of such a restraint

is a 'professional judgment' test."  *Montin*, 718 F.3d at 755 (citing 457 U.S. at 321).

"'[T]he Constitution only requires that the courts make certain that professional judgment

in fact was exercised.  It is not appropriate for the courts to specify which of several

20

professionally acceptable choices should have been made.'"  *Beaulieu*, 690 F.3d at 1032

(quoting *Youngberg*, 457 U.S. at 321).  "Pursuant to this test, great deference is owed to

the professional judgment of a qualified professional charged with balancing the

plaintiff's freedom from bodily restraint against the safety of the public, the plaintiff, and

other patients."  *Montin*, 718 F.3d at 755 (citing *Youngberg*, 718 F.3d at 321).

> [T]he decision, if made by a professional, is presumptively
> valid; liability may be imposed only when the decision by the
> professional is such a substantial departure from accepted
> professional judgment, practice, or standards as to
> demonstrate that the person responsible actually did not base
> the decision on such a judgment.

*Youngberg*, 457 U.S. at 323 (footnotes omitted); *accord Beaulieu*, 690 F.3d at 1032-33;

*Perseke*, 2016 WL 6275191, at *7.

In *Montin*, the Eighth Circuit considered a due process challenge brought by "an

involuntarily committed mental patient" to "a facility-wide change in policy depriv[ing]

him of a previously held ability to walk unsupervised around an unsecured area of the

grounds."  718 F.3d at 753.  The Eighth Circuit began its analysis by citing *Youngberg*

and "recogni[zing] that involuntarily civilly committed persons hold a protected liberty

interest to be free from unnecessary *bodily* restraint."  *Id.* at 754-55 (emphasis added).

The Eighth Circuit observed that "[n]either our court nor the Supreme Court have held

that a refusal to permit an involuntarily civilly committed person to walk unsupervised in

an unsecured area rises to the level of a 'bodily restraint.'"  *Id.* at 755.

As for the "restraint" challenged in *Montin*, the Eighth Circuit stated that "[t]here

is a stark difference between actual physical restraints we have addressed in prior

opinions and the interest Montin asserts in this case," citing *Beaulieu*, 690 F.3d at 1031, involving "use of 'a black box, a wrist chain, and leg irons' for 'travel outside of the secure perimeter'"; *Strutton v. Meade*, 668 F.3d 549, 553 (8th Cir. 2012), involving "use of a 'restriction table'"; and *Heidemann v. Rother*, 84 F.3d 1021, 1025 (8th Cir. 1996), where "the body of a non-verbal, physically and mentally disabled nine-year-old girl who suffered from epilepsy" was "tightly b[ound] with a blanket." *Montin*, 718 F.3d at 755; *see also Norris*, 494 F.3d at 637-39. Acknowledging that "[a]t some point along the spectrum of restrictions that might potentially be characterized as bodily restraints, the asserted restraint becomes merely an incident of the fact of commitment," the Eight Circuit held "that Montin simply has failed to articulate a bodily restraint." *Montin*, 718 F.3d at 755.

Placement in the High Security Area/Protective Isolation is another point along that continuum. Protective isolation involves "placing a person in treatment in a room from which the person is not able or permitted to exit as a way of defusing or containing dangerous behavior that is uncontrollable by any other means." Minn. R. 9515.3090, subp. 4. To some degree, Plaintiff's placement in the High Security Area/Protective Isolation arguably implicates his interest in being free from unnecessary bodily restraint. *See Perseke*, 2016 WL 6275191, at *5. Such placement appears more restrictive than merely an incident of the fact of his civil commitment as was present in *Montin*. Yet, it does not involve the actual physical restraints present in *Youngberg*, *Beaulieu*, *Strutton*, and *Heidemann*.

22

In *Montin*, the Eighth Circuit observed that, "[w]hen *Youngberg* does not apply, the 'professional judgment' standard does not apply.  In such a situation, a plaintiff may maintain a substantive due process claim only if the contested state action is so egregious or outrageous that it is conscience-shocking."  718 F.3d at 755 (citation and quotation omitted).  In *Karsjens*, the Eighth Circuit emphasized that a plaintiff must show that a state actor's actions were conscience-shocking in order to maintain a substantive due process claim.  845 F.3d at 408, 410; *see Benson*, 2017 U.S. Dist. LEXIS 158017, at *11. In the absence of actual physical restraint, the Court considers whether Plaintiff has alleged facts that his placement in the High Security Area/Protective Isolation was so egregious or outrageous as to shock the contemporary conscience.

*Conscience-Shocking Test.*    As suggested above, substantive-due process violations are rare, involving truly egregious and extraordinary cases.  Plaintiff alleges that the actions of Defendants were "unreasonable" and did "not involve a documented risk to Plaintiff, public safety or a documented legitimate purposes."  (Compl. ¶¶ 26(a), (b); *see* Pl.'s Mem. in Opp'n at 6.)  In responding to Defendants' motion, Plaintiff argues that his placement in the High Security Area/Protective Isolation was "arbitrar[y]."  (Pl.'s Mem. in Opp'n at 6.)

Plaintiff simply has not alleged the type of conscious-shocking conduct required for a substantive due process violation.  Plaintiff has not alleged that he was deprived of basic needs; the conditions in the High Security Area/Protective Isolation posed a substantial risk of serious harm; or his temporary placement was otherwise egregious or outrageous.  *See Karsjens*, 845 F.3d at 408; *Montin*, 718 F.3d at 755; *Beaulieu*, 690 F.3d

at 1045; *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, at *16 (D. Minn. Sept. 30, 2014); *see also Wickner*, 2011 WL 6960975, at *3 n.2 ("inadequacy of . . . due process claim c[ould] be readily understood" in comparison with *Smith* where the Eighth Circuit held that a pretrial detainee failed to state a due process claim based on his placement in segregation for four days in which the toilet overflowed and he was made to endure the stench of his own feces and urine as "the raw sewage allegation amounted to no more than a *de minimis* imposition that did not implicate constitutional concerns" (quotation omitted)).

Plaintiff argues that granting Defendants' motion to dismiss is tantamount to "a finding that [placement in the High Security Area/Protective Isolation] of any length and for any reason . . . is always justified by . . . MSOP's general need for security and control." (Pl.'s Mem. in Opp'n at 8.) This is not so. There must, however, be facts from which it could reasonably be inferred that such placement rose to the level of being so severely egregious or outrageous as to demonstrate a brutal and inhumane abuse of power shocking to the conscience. *See Williamson*, 912 F.3d at 181 (pretrial detainee "presented evidence on which a reasonable factfinder could conclude that his three-and-a-half years of solitary confinement were so excessive relative to his infractions—and the defendants so arbitrary in their actions—that [he] suffered unconstitutional punishment in violation of his substantive due process rights"). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Plaintiff's pleadings in this case do not present a close call of facial plausibility. It cannot

24

be inferred, let alone reasonably, that Defendants' actions or inactions shock the conscience. Therefore, the Court recommends that Plaintiff's substantive due process claim based on his placement in the High Security Area/Protective Isolation be dismissed for failure to state a claim.

### b.  Fourth-Amendment Derivative Claims

Plaintiff also alleges that his rights under the Fourth Amendment have been violated. The Fourth Amendment generally protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Liberally construing Plaintiff's Complaint, Plaintiff's generic reference to the Fourth Amendment appears to be in connection with the use of "restraints" to transport him to the High Security Area/Protective Isolation and the argument that placement in the High Security Area/Protective Isolation was a "seizure." In light of Plaintiff's pro se status, the Court has considered any such claims within the proper legal framework. *See Stone*, 364 F.3d at 915.

### i.  Search

"[I]nvoluntarily committed civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." *Beaulieu*, 690 F.3d at 1028 (citing *Serna*, 567 F.3d at 948-49). To determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559; *accord Serna*, 567 F.3d at 949, 952-56. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the

justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559; *accord Serna*, 567 F.3d at 952-53.

The Complaint contains no facts describing the scope of any search, the manner in which any search was conducted, the justification for any search, or the place in which any search was conducted. *In fact, the Complaint does not allege that Plaintiff was subject to a search at all.* In his memorandum in opposition, Plaintiff makes repeated reference to unclothed visual body searches, but Plaintiff does not allege that he was subject to such a search and under what circumstances. (*See* Pl.'s Mem. in Opp'n at 6, 10-14.) These passages appear as if they have been taken from other MSOP litigation. There has been a significant amount of litigation on the use of unclothed visual body searches at MSOP and it appears that Plaintiff may have included such arguments believing them to support his claims. *See, e.g.*, *Beaulieu*, 690 F.3d at 1027-1030; *Serna*, 567 F.3d at 953-56; *Larson*, 2018 WL 3352926, at *4; *Ivey v. MSOP*, No. 12-cv-30 (DWF/TNL) (Report & Recommendation at 29-32, Jan. 23, 2017, ECF No. 55) [hereinafter *Ivey I*], *adopting report and recommendation as modified*, (Order, Mar. 31, 2017, ECF No. 70) [hereinafter *Ivey II*]. Therefore, the Court recommends that any Fourth Amendment claim premised on an unreasonable search be dismissed for failure to state a claim.

### ii.  Seizure

According Plaintiff's Complaint the most generous reading, the Court has identified two possible "seizures": (1) the removal of Plaintiff from his room and

placement in the High Security Area/Protective Isolation, and (2) the use of "restraints" when taking Plaintiff to the High Security Area/Protective Isolation.

To the extent Plaintiff is claiming that his placement in the High Security Area/Protective Isolation amounted to a seizure, the Court concludes that the curtailment of any liberty interest resulting from such placement is more properly viewed in the context of his due process claims. *See supra* Section III.C.3.a.

To the extent Plaintiff is attempting to assert a claim for excessive force based on the use of "restraints" when he was taken to the High Security Area/Protective Isolation, the status of the person asserting a claim of excessive force determines the proper constitutional framework. *See Andrews v. Neer*, 253 F.3d 1052, 1060-61 (8th Cir. 2001); *Ivey I*, No. 12-cv-30 (DWF/TNL) (Report & Recommendation at 21); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). If the person is an arrestee, the Fourth Amendment applies. *See, e.g.*, *Andrews*, 253 F.3d at 1060. "Excessive-force claims brought by prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment." *Id.* at 1061. As a civilly committed individual, Plaintiff's status is analogous to a pretrial detainee, and therefore any excessive force claim comes under the Fourteenth Amendment rather than the Fourth Amendment. *Kingsley*, 135 S. Ct. at 2470, 2473, 2475; *Andrews*, 253 F.3d at 1061; *Ivey II*, No. 12-cv-30 (DWF/TNL), (Order at 6). "Such excessive force claims are governed by an objective reasonableness test." *Ivey II*, No. 12-cv-30 (DWF/TNL), (Order at 6 (citing *Kingsley*, 135 S. Ct. at 2472-73)). "[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Kingsley*, 135 S. Ct. at 2473 (quotation

omitted). Such factors that "may bear on the reasonableness or unreasonableness of the force used" include

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* In doing so,

> [a] court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of [institutional] officials are needed to preserve internal order and discipline and to maintain institutional security.

*Id.* (quotation omitted).

Here, the entirety of Plaintiff's allegations regarding any use of force are as follows: "A-team members approached and instructed [Plaintiff] to turn around for restraints. [Plaintiff] replied, 'What? Now I'm a criminal?' as he complied." (Compl. ¶ 11.) Plaintiff has alleged little to nothing more. There are no facts from which it can plausibly be inferred that any force applied to Plaintiff was excessive.

Accordingly, the Court recommends that any unreasonable seizure claim be dismissed for failure to state a claim.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 18) be **GRANTED**, and this matter be **DISMISSED WITHOUT PREJUDICE**.

Date: January___25____, 2019                    _____*s/ Tony N. Leung*_____
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota


                                                *Schlumpberger v. Osborne et al.*
                                                Case No. 16-cv-78 (SRN/TNL)


### **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).